# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| DR. DAVID L. SWOOPE, JR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:10-CV-423-RL |
| ) | |
| GARY COMMUNITY SCHOOL ) | |
| CORP. *et al.*, ) | |
| ) | |
| Defendants, ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants Dr. Stanley Wigle and Dr. Vernon Smith's Motion to Dismiss and For Judgment on the Pleadings, filed by Defendants, Dean Stanley Wigle and Professor Vernon Smith, on December 27, 2010 (DE #7). For the reasons set forth below, Defendants' Motion is **GRANTED** and the **CLERK** is **ORDERED** to **DISMISS** all claims against Defendants Wigle and Smith **WITH PREJUDICE**. The remaining claims against Defendants Gary Community School Corporation, Dr. Myrtle Campbell, and Dr. Cordia Moore, **REMAIN PENDING**.

BACKGROUND

Plaintiff, Dr. David Swoope ("Swoope"), filed this action against several defendants including the "University Defendants," Dr. Vernon Smith (a professor at Indiana University Northwest "IUN") and Dr. Stanley Wigle (Dean for the IUN's School of

Education), asserting multiple violations of state and federal laws. For the purposes of the instant motion, this order will address Swoope's claims against Wigle and Smith - a claim under 42 U.S.C. § 1983 that the Defendants acted "under color of state law" in depriving him of due process, and state law claims including breach of contract, defamation, and tortious interference with contract.

In March 2005, Plaintiff was recruited and moved to Indiana to take a position as an Assistant Principal in the Gary Community School Corporation ("GCSC"). (Compl. ¶¶ 12-13.) He was hired under a regular teacher's contract and was assigned to an administrative position as an Assistant Principal at Wirt High School. *Id.* At the time of his hiring, Swoope held a B.S. Degree from Alabama A&M University with a concentration in Technology Education; a Masters Degree from Ohio State University in the areas of Training and Development and Technology Education; a PhD from Ohio State University in the areas of Education, Collegiate Affairs, Academic Affairs, Training and Development, and Technology Education, and he held teaching licenses in Special Education and Technology Education. (*Id.* ¶ 14.) When he was hired, the former Superintendent and the GCSC knew that Swoope did not hold an Indiana Administrative License. (*Id.* ¶ 15.)

Swoope told his superiors at GCSC and the Board of Trustees that he had aspirations to someday qualify as an Assistant

Superintendent. (*Id.* ¶ 40.) However, Swoope lacked the required Indiana administrative license to serve in this position. (*Id.* ¶ 41.) The parties agreed that Swoope would complete the necessary course work to obtain an Indiana administrative license. (*Id.* ¶ 16.)

In March 2006, Swoope enrolled in the K-12 Building Level Administrative Program at IUN in Gary, Indiana. (*Id.* ¶ 17.) Defendant Smith was the Director of the K-12 Building Level Administrative Program at IUN and taught the only class at IUN through which Swoope could complete the program and the A-695 Practicum. (*Id.* ¶¶ 18, 21, 22.) At the time, Defendant Wigle served as Dean for IUN's School of Education. (*Id.* ¶¶ 24, 126.)

When Swoope was admitted to the Administrative License Program, he possessed a temporary Indiana teaching license. (*Id.* ¶ 20.) His temporary license was converted to a Professional License after Swoope completed 6 credit hours and began taking classes for his administrative license. *Id.* One of the requirements for the course overseen by Dr. Smith was for Plaintiff to complete an internship known as the A-695 Practicum in School Administration. (*Id.* ¶ 21.) Swoope alleges that Smith told him on a number of occasions that he was not qualified and that he was wasting his time in the program. (*Id.* ¶ 23.) Some meetings were held at IUN that included Smith, Wigle, and Swoope. (*Id.* ¶¶ 24-26.) Swoope alleges that without his consent or knowledge, Swoope

3

was involuntarily withdrawn from the IUN program. (*Id.* ¶ 36.) Swoope had to file a new application and pay a new admission fee before he could be reinstated. (*Id.* ¶ 38.)

Swoope was assigned to complete his Administrative Internship (or Elementary Practicum) at Marquette School, and his internship began there in January, 2009. (Compl. ¶¶ 43, 45.) Shortly after his assignment, Dr. Cordia Moore, Executive Director of GCSC (and another defendant in this case), ordered Swoope to stop reporting to Marquette for his practicum. (*Id.* ¶¶ 7, 46.) Moore told Swoope that he had violated protocol when he did not get authorization from her office to complete his practicum with the GCSC. (*Id.* ¶ 47.) Swoope was not permitted to leave his assigned work post in the district and go to Marquette for his practicum without losing pay. (*Id.* ¶ 53.) Thus, Swoope stopped attending his internship at Marquette. The complaint alleges that Swoope "was not allowed to complete his administrative internship and practicum within the GCSC." (*Id.* ¶ 84.)

After GCSC terminated Swoope's practicum at Marquette, Swoope found a school district outside of GCSC, and he claims he eventually completed his Practicum at Evans Elementary School in River Forest, Indiana. (*Id.* ¶¶ 89-90.) However, Swoope received a failing grade from Smith at IUN on his Practicum because he had not "successful[ly] completed the A-695 Practicum in School Administration (spring)." (*Id.* ¶¶ 92-93.) Additionally, Swoope

4

was not allowed to graduate from the program and receive the required certification which was a condition precedent to the issuance of an Administrative K-12 License. (*Id.* ¶ 94.) Swoope alleges that Smith discriminated against him by giving him a failing grade on his Practicum because he completed the Practicum while on sick leave from GCSC. (*Id.* ¶ 93.) However, Defendants argue Professor Smith gave Swoope a failing grade "because he did not properly complete the coursework." (Def.'s Br. Supporting Dismissal, DE #8, pp. 1-2.) Although it is unclear from the pleadings in this case, it appears that the University Defendants might have given Swoope a failing grade because Swoope's Practicum at Evans Elementary, outside of GCSC, did not satisfy his course requirements at IUN. After Swoope failed the required course, GCSC elected not to rehire him. (*Id.* ¶ 31.)

Plaintiff filed this action on October 25, 2010, alleging the University Defendants defamed him by stating he was not "qualified" (Compl. ¶¶ 33-35), discriminated against him by failing him (*Id.* ¶ 93), tortiously interfered with his employment contract with the GCSC by giving him a failing grade (*Id.* ¶¶ 111-20), denied him due process by giving him a failing grade (*Id.* ¶ 135), and breached a contract with him by giving him a failing grade. (*Id.* ¶¶ 121-41.) Defendants Wigle and Smith filed the instant motion on December 27, 2010, requesting their dismissal from the complaint for failure to state subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1),

5

or alternatively, for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

DISCUSSION

Procedural Standards

A party may move for a 12(c) judgment on the pleadings after the filing of both the complaint and answer. *Brunt v. Service Employees Int'l Union*, 284 F.3d 715, 718 (7th Cir. 2002); Fed. R. Civ. P. 12(c). The Court will grant a 12(c) motion on the pleadings "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). Additionally, the Court "will view the facts in the complaint in the light most favorable to the nonmoving party." *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The same standards that apply to 12(b)(6) motions also apply to 12(c) motions. *Id.* In that vein, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted).

A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove

6

no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Plus, *Iqbal* requires that a plaintiff plead content which allows this Court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  129 S. Ct. at 1949.

This Court, in ruling upon an issue of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), must accept as true all well-pleaded factual allegations, and draw all reasonable inferences in favor of the plaintiffs.  *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 604 (7th Cir. 2008).

Section 1983 Claim

Defendants' defense to Swoope's 1983 claim is that as employees of IUN, a state university, they are not "persons" under 42 U.S.C. § 1983.  Generally, section 1983 provides a federal cause of action any time an individual, who, under color of state law, deprives another of any right, privilege or immunity as provided by the Constitution and laws of the United States.  42 U.S.C. § 1983.  Swoope's claim involves an alleged due process deprivation as a result of his receipt of a failing grade in the course practicum taught and overseen by the University Defendants.

A civil rights plaintiff must specify whether suit is brought against the defendant in their official capacity, or in their

individual capacity. *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). The Supreme Court has held that neither a State, nor its officials acting in their official capacities are "persons" under section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Joseph v. Board of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). The Eleventh Amendment bars section 1983 claims for damages against state officers in their official capacity because the State, in such a suit, is the real party in interest. *See, e.g., Will*, 491 U.S. at 71 (state officials are not "persons" for the purposes of § 1983 where the relief sought is monetary in nature); *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 101 (1984); *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007)("The [Eleventh] Amendment usually bars actions in federal court against a state, state agencies, or state officials acting in their official capacities"); *Porco v. Trustees of Indiana Univ.*, 453 F.3d 390, 394-95 (7th Cir. 2006) (finding Eleventh Amendment protected the defendants sued in their official capacities from satisfying a money judgment). Alternatively, state officials sued in their *individual* capacities, are "persons" subject to liability under section 1983. *Hafer v. Melo*, 502 U.S. 21, 27-30 (1991).

In the caption of his complaint, Swoope has indicated that Smith and Wigle are being sued in both their official and

individual capacities (Compl., DE #1).  In Plaintiff's response memorandum, although he specifies that he brought suit against the University Defendants "in both their official capacity and in their personal-individual capacity," he then concedes that he is hanging his hat on the individual claims because "[w]hy in the world would Swoope have bothered to sue Smith and Wigle for damages in their official capacities alone when such suit would run headlong into the 11th Amendment?" (Pl.'s Resp., DE #9, p. 7.)  The Court concurs that the Eleventh Amendment bars suit against the University Defendants in their official capacity.  *See Peirick*, 510 F.3d at 695.

Thus, the Court is left analyzing the § 1983 individual capacity claims.  A defendant is liable under § 1983 in his individual capacity only if he was personally responsible for the deprivation of the plaintiff's constitutional rights.  *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).  Neither Plaintiff's complaint, nor his response brief specify any action taken by either of the University Defendants which falls outside the gamut of their "official" capacities as Professor and Dean.

To the extent Swoope is arguing that his right to due process was violated, the complaint fails to state a proper claim.  To have a procedural due process claim, Swoope must prove that he was deprived of an actual protected property interest.  Plaintiff's assertion that he has a property right in a passing grade in his

9

practicum cannot be supported. In *Williams v. Wendler*, 530 F.3d 584 (7th Cir. 2008), the Seventh Circuit explained that the student in that case:

> premise[d] the claim entirely on the bald assertion that any student who is suspended from college has suffered a deprivation of constitutional property. That cannot be right. And not only because it would imply that a student who flunked out would have a right to a trial-type hearing on whether his tests and papers were graded correctly and a student who was not admitted would have a right to a hearing on why he was not admitted; but also because the Supreme Court requires more. It requires, as we know, proof of an entitlement . . . in this case an entitlement not to be suspended without good cause.

*Williams*, 530 F.3d at 589. In *Williams*, because there was no suggestion of a contract entitling those plaintiffs to continued enrollment at the university, their due process claim failed as a matter of law. *Id.* at 589-90. The same is true in this case - because Swoope has failed to plead the existence of a contract that entitled him to continued enrollment at IUN, or a passing grade in the practicum, the motion to dismiss is properly granted as to his procedural due process claim. *See, e.g., Sun Park v. Indiana Univ. Sch. of Dentistry*, No. 1:10-cv-1408-WTL-WGH, 2011 WL 588626, at *4-*5 (S.D. Ind. Feb. 9, 2011) (granting motion to dismiss, *inter alia*, procedural due process claim where student failed to identify specific contractual promise defendants failed to satisfy).[1]

---

[1] The complaint alleges that "the relationship between IUN and Swoope was contractual in nature" and that the contractual relationship was set forth in IUN's Policies and Procedures

10

Moreover, in the case of academic dismissals like this one, "procedural due process does not require any form of hearing before a decision-making body, either before or after the termination decision is made." *Fenje v. Feld*, 398 F.3d 620, 626 (7th Cir. 2005) (citing *Martin v. Helstad,* 699 F.2d 387, 391 (7th Cir. 1983)); *Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 87-91 (1978). In this case, Plaintiff alleges a due process deprivation despite more than one meeting with both Drs. Wigle and Smith concerning his progress with the A-695 practicum. (Compl. ¶¶ 24-26.) Meetings were also held addressing complaints that Plaintiff had made about treatment he received during his enrollment. (*Id.* ¶¶ 34, 37.) Again, no formal hearing is required by the Constitution to comport with due process for academic dismissals. *See Fenje*, 398 F.3d at 626; *Horowitz*, 425 U.S. at 90 ("we decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing."). Therefore, under the circumstances, Swoope received a greater degree of procedural due process than was even required.

---

Manual. (Compl. ¶¶ 127-28.) Yet Swoope has not sued the University, and he states in his response that "the State of Indiana and Indiana University are not, directly or indirectly [,] intended by Swoope to be parties to this action and have not been sued in any capacity." (Pl.'s Resp., DE #9, p. 10.) Importantly, Swoope does not allege that any contract existed between Swoope and Dean Wigle or Professor Smith. Swoope did not attach any contract to the complaint, nor does he cite any contractual provisions that were allegedly violated by the University Defendants.

As such, Swoope's procedural due process claim fails to state a proper claim for relief.

To the extent Swoope has alleged a substantive due process claim, that also fails. "[N]either the Supreme Court nor the Seventh Circuit has recognized education, or the right to continued enrollment in a graduate program, as a fundamental right." *Id.* at *6 (citing *Galdikas v. Fagan*, 342 F.3d 684, 688-89 (7th Cir. 2003)); see also *Bissessur v. Indiana Univ. Bd. Of Trustees*, 581 F.3d 599, 601 (7th Cir. 2009) (affirming dismissal for failure to state a claim, holding "[a] graduate student does not have a federal constitutional right to a continued education.").

Plaintiff's dismissal was academic in nature, and done so in accordance with the University Defendants' official capacity as Dean and Professor. Based on the pleadings, and as a matter of law, there is no cognizable due process claim for Plaintiff. Accordingly, the University Defendants' motion is **GRANTED** and Plaintiff's section 1983 claim against Wigle and Smith is **DISMISSED.**

Indiana Tort Claims Act

In his complaint, Plaintiff also alleges several state tort law claims, including defamation and tortious interference with contract. (Compl. ¶¶ 113-120, 127-38.) There is no question that Indiana law applies here on these pendent claims related to the

12

1983 claim. *See* 28 U.S.C. § 1367; *Meury v. Eagle-Union Cmty. Sch. Corp.*, 714 N.E.2d 233, 242 (Ind. Ct. App. 1999). The Indiana Tort Claims Act ("ITCA") provides that "a claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision ... within 180 days after the loss occurs." Ind. Code § 34-13-3-8. A "state educational institution" is included in the definition of a political subdivision for the purposes of the ITCA. Ind. Code § 34-6-2-110(7). The notice requirements of the ITCA apply not only to suits against political subdivisions, but also to suits against employees of political subdivisions. *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003); *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999). Once a defendant raises failure to comply with the notice requirements of the ITCA, the burden then shifts to the plaintiff to prove compliance. *Davidson*, 716 N.E.2d at 34.

After the University Defendants filed the instant motion, Plaintiff failed to meet his newly acquired burden to prove compliance with the notice requirements. In his response brief, Plaintiff confuses the application of the ITCA, and argues only that it is inapplicable to his 1983 claim. He is right, of course, that under *Felder v. Casey*, 487 U.S. 131 (1988), the Supreme Court held that notice-of-claim statutes are inapplicable to federal 1983 claims. However, this does not change the disposition of

13

Plaintiff's several state tort law claims. *See, e.g., Alexander*, 256 F. Supp. 2d at 875. As previously discussed in this order, Swoope's 1983 claim was dismissed for reasons not effected by the ITCA.

The alleged events took place beginning in 2005 and culminating in Plaintiff's receipt of a failing grade in the A-695 Practicum in the Spring of 2009. Swoope alleges that he had some interaction with IUN in September 2009. (Compl. ¶¶ 91-92.) Even assuming, *arguendo*, that the alleged torts occurred at the latest possible date of September 30, 2009, Swoope had until March 29, 2010 (180 days later) to provide statutory notice to the University or its representatives. However, Swoope filed his claim on October 25, 2010, without ever providing the required notice.

Because of Plaintiff's failure to follow the notice requirements for his state law tort claims, as a matter of law, his claims for defamation and tortious interference with contract must fail. Therefore, the University Defendants' motion for a judgment on the pleadings is **GRANTED** and Swoope's state tort law claims are also **DISMISSED**.

Breach of Contract

Finally, Swoope alleges breach of contract in the complaint. (Compl. Count VII.) In their motion to dismiss, the University Defendants argue this claim fails because of the discretion and

14

immunity afforded to academic decisions. It is true that "[w]hen judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). Federal courts are not well suited to evaluate the substance of academic decisions that are made by faculty members at public institutions. *Id.* at 226. Indeed, "such determinations rest in most cases upon the subjective professional judgment of trained educators, [so] the courts have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community." *Gordon v. Purdue University*, 862 N.E.2d 1244, 1251-52 (Ind. Ct. App. 2007) (quotation omitted) (dismissing contract claim of student expelled for academic reasons). In an academic dismissal "it is sufficient that the student was informed of the nature of the faculty's dissatisfaction and that the ultimate decision to dismiss was 'careful and deliberate.'". *Fenje*, 398 F.3d at 626 (quoting *Horowitz*, 435 U.S. at 85).

In response to the motion to dismiss, Swoope fails to directly address this claim for breach of contract. Swoope argues that the decisions made by Smith and Wigle were not discretionary, but rather intentional and corrupt; however, the cases cited by him are inapposite, from other jurisdictions, and therefore not persuasive. (Pl.'s Resp., DE #9, pp. 16-19.) Moreover, as mentioned earlier,

Swoope has failed to allege that a contract existed between Swoope and Dean Wigle and Professor Smith. Although he generally cites to the Policies and Procedure Manual of IUN in the complaint (¶ 129), Swoope did not attach any contract or other documents to the complaint, and he does not cite any language from any alleged contract. Swoope has not identified any contractual language, or specific promise made, that the University Defendants allegedly breached. This is insufficient. *See, e.g., Bissessur*, 581 F.3d at 602 (affirming dismissal for failure to state a claim against university for breach of implied contract, stating, "[a]bsent evidence of such a specific promise, the court will not participate in second-guessing the professional judgment of the University faculty on academic matters"); *Gordon*, 862 N.E.2d at 1251-52 (dismissing contract claim of expelled student for failure to allege specific contractual promise had been breached). As such, this claim fails as a matter of law.

Award Of Costs

In their Motion to Dismiss, the University Defendants request dismissal of the claims, as well as "an award of costs." (DE #7.) However, this is the only time the University Defendants mention costs in the record, and they have provided the Court with no argument or legal citations to support such request. Plaintiff does not address any potential award of costs either. To the

extent the University Defendants still wish to pursue such costs, they should file a motion with this Court, providing the Court with legal authority supporting their position.

CONCLUSION

For the reasons set forth above, Defendants' Motion is **GRANTED** and the **CLERK** is **ORDERED** to **DISMISS** the claims against Defendants Wigle and Smith for failure to state a claim pursuant to Fed. R. Civ. P. 12(c) **WITH PREJUDICE**. The remaining claims against Defendants Gary Community School Corporation, Dr. Myrtle Campbell, and Dr. Cordia Moore, **REMAIN PENDING**.

**DATED: April 26, 2011**     /s/ RUDY LOZANO, Judge
                                        **United States District Court**