## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

DR. DAVID L. SWOOPE, JR.   )
                            )
       Plaintiff,     )
                            )
    vs.                )    Case No. 2:10-CV-423
                            )
GARY COMMUNITY SCHOOL   )
CORP. *et al.*,         )
                            )
       Defendants.    )

## OPINION AND ORDER

This matter is before the Court on the: (1) "Motion for Summary Judgment," filed by Defendants, Gary Community School Corporation, Dr. Myrtle Campbell, and Dr. Cordia Moore (collectively "Defendants"), on June 30, 2014 (DE #126); (2) "Defendants' Motion to Strike Doc 135," filed by Defendants on October 2, 2014 (DE #144); (3) "Defendants' Motion to Strike Documents 136, 136-1, 137, 138, 138-1, 138-2, 138-3, 138-4, 139, 139-1, 139-2, 139-3, 140, 140-1, 140-2, 140-3, 140-4, 141, 141-1, 141-2, 141-3, 142, 142-1, 142-2, 143, 143-1," filed by Defendants on October 2, 2014 (DE #145); (4) "Verified Motion for Leave to File Plaintiff's Response to Defendants' Motion for Summary Judgment Instanter," filed by Plaintiff, Dr. David Swoope ("Swoope"), on October 8, 2014 (DE #146); and "Defendants' Motion to Strike Document[s] 146, 147, 148," filed by Defendants on October 22, 2014 (DE #150.) For the reasons set forth below, the

Motion for Summary Judgement (DE #126) is **GRANTED IN PART AND DENIED IN PART** as set forth in the body of this Order, the Defendants' various Motions to Strike (DE #144, #145, & #150) are **DENIED**, and Swoope's Motion for Leave to File Instanter (or, more accurately, *nunc pro tunc*) (DE #146) is **GRANTED**. Furthermore, in its discretion, the Court **STRIKES** the documents at the following docket entries *sua sponte*: DE #135 and DE #136 through #143.

BACKGROUND

Swoope filed this action against several defendants alleging various federal claims including gender discrimination, retaliation, harassment, and deprivation of due process. Swoope also raised various state law claims including breach of contract, defamation, and tortious interference with his contract. On April 26, 2011, this Court entered an opinion and order dismissing all claims against Defendants Dr. Stanley Wigle and Dr. Vernon Smith. (See DE #24.) The claims against Defendants, Gary Community School Corporation ("GCSC"), Dr. Myrtle Campbell ("Campbell"), and Dr. Cordia Moore ("Moore"), remained pending. On March 24, 2012, Swoope moved to amend his complaint and was granted leave to amend. (DE #66 & #72.) He filed his amended complaint on May 17, 2012, and Defendants moved to dismiss Swoope's amended complaint for failure to state a claim. (DE #74 & #76.) On August 28, 2012, this Court granted the motion to dismiss in part and denied it in

part. (DE #82.) Counts I and II were dismissed with prejudice, and Counts III-VII remained pending. (*Id.*) On February 1, 2013, Swoope sought leave to file a second amended complaint. (DE #100.) He was granted leave to do so on April 1, 2013, and the second amended complaint was docketed several days later. (DE #105 & 106.) Defendants filed an answer and counterclaim against Swoope on June 11, 2013. (DE #107.)

Following a lengthy discovery period, Defendants filed the instant motion for summary judgment on June 30, 2014. (DE #126.) Swoope requested and was granted an extension of time within which to file his response. (See DE #132.) The Court ordered that Swoope's response was to be filed by September 30, 2014, and cautioned him that no further extensions were to be forthcoming. (*Id.*) On September 29, 2014, a document entitled "Violation of Human Rights and Constitutional Rights of Dr. Daoud Swoope Jr. El, Formerly known as Dr. David Swoope Jr." was filed by a person who referred to himself as "Prime Minister GSKS: Durriyyah Bey of the Moorish Nation-Moorish Science Temple of America Divine and National Movement Regency Headquarters" and Swoope's "Diving Minister and Spiritual Advisor." (DE #135.) On October 1, 2014, Swoope's attorney, Douglas Grimes ("Grimes"), filed a response in opposition to the motion for summary judgment which spanned several docket entries. (See DE #136-#143.) The next day, Defendants filed a motion to strike the filing of Durriyyah Bey, arguing that

it was immaterial, impertinent, and scandalous as well as a motion to strike Swoope's response, arguing that it was untimely. (DE #144 & #145.) On October 8, 2014, Swoope filed a motion for leave to file his response to the summary judgment motion *instanter*, which expressed Grimes' difficulties in meeting the original deadline. (DE #146; see also exhibits and response brief at DE #147-#148.) On October 15, 2014, Swoope also filed a response to Defendants' motions to strike, arguing that those documents should not be stricken but rather should be construed as "supplementation" of the summary judgment record as a whole. (DE #149.) On October 22, 2014, Defendants filed another motion to strike, arguing that all documents filed after September 30, 2014, should be stricken as being redundant and/or untimely. (DE #150.) That same day, Defendants also replied to their original motion to strike, arguing again that the filings were indeed untimely. (DE #151.) Finally, on November 5, 2014, Swoope filed a response to Defendants' motion to strike, arguing that Defendants' motions were improper and unwarranted. (DE #152.) Defendants failed to file a reply in support of their motion for summary judgment.

DISCUSSION

*Preliminary Issues*

Before delving into the merits of the case, the Court must address the flurry of motions filed by the parties related to the

4

admissibility of various documents.  In a nutshell, Swoope filed his response to the motion for summary judgment one day late due to Grimes' alleged scheduling conflicts and time management issues. Defendants responded with several motions to strike, all of which were filed pursuant to Federal Rule of Civil Procedure 12(f).  The Court agrees with Swoope that this is procedurally improper.  Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  However, a response to a summary judgment motion is not a pleading, and bringing a motion to strike it under Rule 12(f) is procedurally improper.  See Fed. R. Civ. P. 7(a) (defining pleadings finitely with a list that does not include motions or responses).  Furthermore, a motion to strike under Rule 12(f) is untimely at this stage in the proceedings.  See Fed. R. Civ. P. 12(f)(2) (party may move to strike "within 21 days after being served with the pleading" if no response is allowed). As such, the Court **DENIES** Defendants' motions to strike.  (DE #144, #145, & #150.)

After due consideration, and noting that the interests of justice will be served by allowing the consideration of evidence found within Swoope's summary judgment response brief and exhibits, the Court **GRANTS** Swoope's motion for leave to file those documents *nunc pro tunc.*  However, that ruling shall only apply to the documents filed by Swoope on October 8, 2014.  (DE #147 & #148.)

The documents filed by Swoope on October 1, 2014, are substantively identical to those filed on October 8, 2014. For purposes of clarity on the docket, those documents (which were erroneously filed as multiple responses) are hereby **STRICKEN** *sua sponte*. (DE #136 through #143.)

Finally, in its discretion, the Court will **STRIKE** the document filed by the person who referred to himself as "Prime Minister GSKS: Durriyyah Bey of the Moorish Nation-Moorish Science Temple of America Divine and National Movement Regency Headquarters" and Swoope's "Diving Minister and Spiritual Advisor," because he is neither an attorney nor a party to this case and has no authority to file responses on behalf of Swoope. (DE #135.)

*Standard*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether

summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

A party opposing a properly supported summary judgment motion may not rely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

While the initial burden of production "to inform the district court why a trial is not necessary" lies with the movant, the requirements imposed on the moving party "are not onerous" when it is the nonmovant who "bears the ultimate burden of persuasion on a particular issue." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). A party may move for summary judgment based on either "affirmative evidence that negates an essential element of the nonmoving party's claim" *or* by the other approach of "asserting

that the nonmoving party's evidence [was] insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 1169 (citation and internal quotation marks omitted). Both methods are acceptable under the current rules. *Id.*

*Facts*

On February 28, 2006, the GCSC Board of School Trustees approved Swoope's appointment to the position of Assistant Principal at Wirt Highschool. (Letter, DE #127-4.) Although he was hired as a non-statutory administrator, GCSC presented Swoope with a teacher contract for the school year beginning on July 1, 2006, and continuing until June 30, 2007; he signed the contract on August 30, 2006. (Contract, DE #147-17; Swoope Dep., DE #127-20, p. 5.) Swoope states in his response brief that he was "not [an] at will employee." (DE #148, p. 7.) To support that assertion, he cites to Exhibit 17, which contains the original teacher contract as well as an email dated October 5, 2009, from a person named Julie Slavens[1] to "Ragen, Dr. Campbell, and Darren." (*Id.;* see also Contract & Email, DE #147-17, pp. 1-4.) The email does not mention Swoope by name or specifically identify him in any way. (Email, DE #147, 17, pp. 2-4.) However, it does reference non-statutory and non-certified administrators in general, and it

---

[1] It is unclear who this person is, and Swoope's brief does nothing to clarify the matter.

points out that those employees "have not been given a written contract since June 30, 2007. But each year the board has voted to retain these administrators with a slight increase in salary. Due to this board action each year, the contract for each of these administrative positions has continued." (*Id.* at 2.) It is undisputed that Swoope's initial contract was renewed beyond its original term; on December 8, 2008, a date well past the initial contract's terms, GCSC sent Swoope a "preliminary notification" that it was "considering a decision not to renew [his] contract based on the configuration of schools, budget reductions and school closings." (Notification, DE #127-6.)[2] The notification indicates that "[y]ou will receive final notice of the Board's decision in thirty (30) days from the date of this letter per Indiana Code 20-28-8-3." (*Id.*) No such final notice is included in the record.[3] Swoope's last day of employment with GCSC was July 31, 2009. (Swoope Dep., DE #127-20, p. 4.)

At the time he was originally hired by GCSC, Swoope did not

---

[2] Based on the aforementioned materials, it would appear that, at the very least: (1) Swoope's original contract ran from July 1, 2006, to June 30, 2007; (2) his contract was renewed from July 1, 2007, to June 30, 2008; and (3) his contract was again renewed from July 1, 2008, to June 30, 2009.

[3] Defendants' brief points to a letter approved by Campbell that stated "all administrators contracts with the GCSC expired, effective June 30, 2009. . . . However, you were retained on a non-contractual at will, daily basis from July 1, 2009 to July 31, 2009." (See DE #127, p. 11 (citing to Exhibit 11, Exhibit 6.)) The Court notes that Exhibit 6 is the previously mentioned "preliminary notice" and Exhibit 11 is not contained within the record; included with Defendants' motion are Exhibits 1, 2, 3, 4, 5, 6, 7, 9, 15, 16, 17, 19, 20, 21, 22, 23, 24 and unmarked Exhibits A, B, and C. (See DE #127-1 through #127-20 & DE #128.)

possess an Indiana Administrative License ("License"), but he agreed to complete the necessary course work at Indiana University Northwest ("IUN") to obtain it as soon as possible. (Swoope Aff., DE #147, p. 2.) In the interim, Swoope obtained an emergency permit related to his position as Assistant Principal. (*Id.*) Swoope's original emergency permit was issued by the State of Indiana on April 6, 2006, and expired on June 30, 2006. (Permit, DE #127-12.) His first renewal of that permit was issued on September 21, 2006, and expired on June 30, 2007. (Permit, DE #127-13.) His second renewal of that permit was issued on October 30, 2007, and expired on June 30, 2008. (Permit, DE #127-14.) Prior to the actual expiration of the second renewal permit, GCSC advised Swoope that the State Department of Education would not issue him another emergency permit in his current position because of its mandatory caps. (Letter, DE #127-1.) The letter indicated that, without exception, emergency permits were limited to one original and two renewal permits and that "[a]fter the second renewal (or third year), the emergency permit will not be renewed." (*Id.*) However, as noted above, it is undisputed that GCSC did indeed continue to employ Swoope well beyond the expiration of the last renewal permit.

In an attempt to gain the proper License, Swoope enrolled in the Administrative Licensure Program at IUN (the "Program"). (Swoope Aff., DE #147, p. 2.) According to Swoope, prior to and

during his enrollment in the program, all of the other Program candidates employed by GCSC were female. (*Id*.) Dr. Vernon Smith ("Smith"), a professor at IUN, was the coordinator of the Program and was Swoope's advisor. (Swoope Aff., DE #147, p. 2; Smith Dep., DE #127-19, p. 3.) Swoope was given a syllabus and planning sheet that, combined, provided him with information regarding required courses and timing. (Smith Dep., DE #127-19.) One of the courses that Swoope needed to complete in order to graduate from the Program and obtain his License was the A695. (Smith Dep., DE # 127-19, p. 5.) The A695 experience/practicum had to be done in both an elementary setting and a secondary setting. (*Id*.)[4]

Swoope successfully completed the A695 secondary setting experience/practicum at Wirt High School in Gary, Indiana. (*Id*.) He then began the A695 elementary setting experience/practicum at Marquette Elementary School in Gary, Indiana during the spring semester of 2009.[5] (Swoope Aff., DE #147, p. 6.) Swoope attended three practicum sessions at Marquette Elementary School before he was informed by Moore that he could no longer perform his experience/practicum there because he had violated GCSC's district policies, procedures, and protocol. (*Id*. at p. 3; Letter, DE #147-20.) Specifically, on February 10, 2009, Swoope was told that he

---

[4] One semester of the experience/practicum needed to be completed in an elementary setting, and one semester needed to be completed in a secondary setting. (Smith Dep., DE #127-19, p. 5.)

[5] Swoope's start date at Marquette Elementary School was January 28, 2009. (Swoope Aff., DE #147, p. 6.)

did not submit the proper paperwork or gain the requisite approval from Moore and/or Campbell before commencing the experience/practicum at Marquette Elementary School. (*Id.*) However, according to Judy Dunlap ("Dunlap"), the principal of Wirt High School, previous Program candidates who interned at that school (five total over the course of nine and a half years) were not required to get approval from the administration prior to starting an experience/practicum. (Dunlap Letter, DE #147-5.) In her letter to Moore, Dunlap pointed out that the intern prior to Swoope, Ms. Ava Ligon, did not need to get approval from GCSC and had successfully completed the A695 experience/practicum, gained her License, and became a principal within GCSC, despite missing one day a week in the building for an entire semester. (*Id.*) According to Dunlap, she had requested that Swoope be allowed to use his vacation days to complete the Program, and she was surprised that the request was not authorized as it had been for past interns. (*Id.*; see also DE #147-4.) Swoope ended up missing several weeks of practicum sessions before arranging to transfer his experience/practicum to Evans Elementary School in Hobart, Indiana. (Memo, DE #147-6; Swoope Dep., DE #127-20, p. 20.) He complained to Moore and Bill Cook about the discriminatory treatment by Moore and Campbell. (Swoope Aff., DE #147, pp. 1, 3.)

Although Swoope states in his response brief[6] that he completed all the required courses for the Program, the testimony that he cites in support of his position does not support that assertion. In full context, Smith's testimony is as follows:

> Q: To your knowledge did Dr. Swoope complete all the required classes for the K through 12 Indiana Licensure Program?
>    . . . .
> A: He did not.
> Q: Which ones did he not complete?
> A: A695, second – our spring semester.
> Q: Anything else?
> A: No.
> Q: What was the A695?
> A: For him is was the elementary experience and the practicum.
> Q: Which did he not have, or did he not have either?
> A: What --
> Q: You said the practicum and the experience. Was that one in the same?
> A: The practicum is the experience.
> Q: That's one in the same?
> A: Yeah.
> Q: Okay. Why didn't he have the experience?
> A: He did not complete it. He had the experience, but he did not complete it.
> Q: Okay. When you say "he had the experience," what do you mean?
> A: He began the class. He took it upon himself to do some things that caused him to receive an incomplete in the class.
> Q: What things did he do to cause and receive an incomplete?
> A: He shared with the professor at one location.
> Q: What professor?
> A: Me.
> Q: Okay. All right.
> A: One location for his experience, which I had to approve. He end (sic) up doing it

---

[6] See Response Brief ¶ 3, DE #148, pp. 1-2.

```
            in another building.  He did not complete
            the requirements of the experience.
    Q:      Anything else?
    A:      He distorted the records on his log.
    Q:      Anything else?
    A:      He was given the opportunity to take the
            class again.  He chose not to.
```

(Smith Dep., DE #127-19, p. 5.)[7]  Swoope states that he was not

aware he had the option of retaking the class until much later.

(Swoope Aff., DE #147, p. 6.)

As to the time log issues, Swoope did turn in the log on May

22, 2009, but Smith indicated that he still had several concerns

including date and formatting issues, inconsistences, timing

problems, and lack of specifics.  (DE #127-17, p. 1.)  Smith also

noted that he "need[ed] to know where the field was completed since

I only approved Marquette Elementary School.  I understand it was

at Evans and even though I did not approve this site, I am will to

accept it."  (*Id*.)  Swoope has not cited to any evidence that he

submitted a log that was ultimately satisfactory to Smith, nor has

he cited to any evidence that his grade for the spring semester of

the A695 course was ever changed to a complete by Smith.[8]

_____

[7] Swoope's brief cites to Smith's incomplete deposition testimony found
at DE #147-2, pp. 3-5; for clarity, the Court has cited to that same
deposition testimony as presented in full by Defendants.

[8] In his brief, Swoope states that he "successfully completed his
elementary administrative practicum at River Forest School District, Evans
Elementary School, Lake Station, Indiana in 2009," but the only citations he
provides are to Exhibits 11 and 12.  (See Response Brief ¶ 26, DE #148, p. 7.)
Exhibit 11 is an "Administrator's Evaluation of Practicum Student" written by
Robert Koval, and Exhibit 12 is Swoope's Evans Elementary Activity Log that
was initialed by "RK."  (See DE #147-11 & DE #147-12.)  Neither document
supports Swoope's contention that Smith himself approved the final log or that
Smith himself determined that Swoope had adequately completed the A695 course.

As noted above, Swoope's last day of employment with GCSC was July 31, 2009. (Swoope Dep., DE #127-20, p. 4.) The preliminary notification sent to Swoope by GCSC indicated that the potential decision to not renew his contract was due to the "configuration of schools, budget reductions and school closings." (Letter, DE #127-6.) Although he was informed by Campbell that he was not qualified for further employment within the district, Swoope applied for the dean of students position at Wirt-Emerson High School after his termination. (*Id.* at 3-4.)[9]

*Federal Claims*

Defendants argue that summary judgment should be granted as to Swoope's discrimination claims brought under 42 U.S.C. sections 1983, 1981, 1981A, 1988 and Title VII of the Civil Rights Act of 1964 and 1991, 41 U.S.C. section 2000e, et. seq. (See DE #127, pp. 8-10.)[10] Swoope's response is devoid of any argument or analysis.

---

[9] Beginning on page eight of his statement of genuine issues, Swoope fails to cite to the record in any manner to support his contentions. (DE #148, pp. 8-9.) As such, these facts have not been included or considered by the Court. See *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702-03 (7th Cir. 2010) (collecting cases). Therefore, as in *Gross*, this Court "strikes any of the parties' factual assertions, in any section of their briefs, that lack direct citation to easily identifiable support in the record."

[10] Confusingly, and without any analysis whatsoever, Defendants cite to Federal Rule of Civil Procedure 12(h)(3) and state that the Court should dismiss the second amended complaint *sua sponte* because Swoope has failed to establish subject matter jurisdiction. (DE #127, p. 6.) It is not clear to the Court why Defendants believe the Court lacks subject matter jurisdiction over a case premised on violations of various federal discrimination laws. In any event, the Court **DECLINES** to dismiss the case *sua sponte* on these grounds.

He provides several pages of facts labeled "Statement of Genuine Issues" followed by several pages of rote boilerplate law. (See generally DE #148.) His boilerplate law references the Equal Protection Clause of the Fourteenth Amendment, provides a historical background of section 1983, and generally describes the *Monell* case. (See DE #148, pp. 10-12.) He does not make any effort whatsoever to apply the facts of this case to relevant case law. Failure to respond to or properly develop an argument in response to an opposing side's well-supported position results in forfeiture. See *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[w]e apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue"); *Arlin–Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) (where the party "cited no relevant legal authority to the district court to support the proposition . . . the argument is waived"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to [the defendant's] motion for summary judgment."). This Court need not consider any argument that is not supported by relevant law. See *Matthews v. Waukesha Cnty.*, 759 F.3d 821, 826 (7th Cir. 2014)

(citing *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel.")). Therefore, throughout this order, where Defendants have properly supported their motion for summary judgment (and Swoope has failed to respond in a meaningful way), that motion shall be granted as discussed more fully below. Unfortunately, this is easier said than done, as Defendants' brief in support of their summary judgment motion is also not a beacon of clarity.

Section 1983 provides a federal cause of action any time an individual, who, under color of state law, deprives another of any right, privilege or immunity as provided by the Constitution and laws of the United States. 42 U.S.C. § 1983. A civil rights plaintiff must specify whether suit is brought against a defendant in their official capacity, or in their individual capacity. *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991).

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal citations

and quotation marks omitted).

A plaintiff may bring a section 1983 action against a municipality; however, because *respondeat superior* liability is not applicable, the plaintiff must provide evidence of an "'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (citing *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)); see also *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Municipal liability can be established through "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 834 (citing *Estate of Sims*, 506 F.3d at 515). The Seventh Circuit has clarified that:

> [i]t doesn't matter what *form* the action of the responsible authority that injures the plaintiff takes. It might be an ordinance, a regulation, an executive policy, or an executive act (such as firing the plaintiff). The question is whether the promulgator, or the actor, as the case may be—in other words, the decisionmaker—was at the apex of authority for the action in question.

*Gernetzke v. Kenosha Unified School Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001).

Citizens whose constitutional rights have been violated by public officials may also sue those officials in their individual capacities. *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 878 (7th Cir. 2012). "An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (1983) (emphasis in original)). Liability will not attach to a supervisory official absent evidence of a "causal connection, or an affirmative link, between the misconduct complained of and the official sued." *Wolf-Lillie*, 699 F.2d 864, 869 (7th Cir. 1983).

With regard to section 1983 liability generally, Defendants simply state that Swoope's "complaint does not make any allegation that anyone was acting under the color of law when [Swoope] was allegedly deprived of his constitutional rights. Based on this, [Swoope] has failed to state a 1983 claim for which relief can be granted." (DE #127, p. 8.) Defendants' brief does not acknowledge that Moore and Campbell are public officials or that GCSC is a municipal corporation, does not refer to *Monell*, does not discuss *respondeat superior* and the lack of any policy or custom, and does not mention decision/policy making authorities. While it seems clear to the Court that any number of arguments *could* have been made with regard to the lack of municipal and/or individual liability under section 1983, those arguments were not made by

Defendants, and the Court will not do it for them.[11]  See *Nelson,*
657 F.3d at 590.  While the initial burden of production is not
onerous, the movant *is* required to adequately and clearly inform
the court why summary judgment is proper before the burden is
shifted to the non-movant.  See *Modrowski*, 712 F.3d at 1168.
Accordingly, summary judgment on these grounds is **DENIED**.

As to Swoope's due process claims,[12] Defendants argue that
Swoope's complaint should be "dismissed in its entirety" because
Swoope was an at-will employee with no contractual interest in his
position.  Section 1983 provides a remedy to those alleging a
deprivation of liberty or property without due process of law in

_____

[11]  Citing to Indiana Code section 20-26-5-4, Defendants argue that the
official capacity claims against Moore and Campbell should be dismissed
because the proper party is GCSC.  (DE #127, p. 7.)  However, the Court notes
that, while the caption of Swoope's second amended complaint does state that
Moore and Campbell are being sued in both their individual and official
capacities, the body of Swoope's second amended complaint makes it clear that
Moore and Campbell are only being sued in their individual capacities.  (See
DE #106, p. 2.)  To the extent that Moore and Campbell were sued in their
official capacities, the Court acknowledges that those claims are properly
treated as a suit against GCSC.  See *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th
Cir. 2007) ("An official capacity suit is tantamount to a claim against the
government entity itself.")
      Defendants also cite specifically to Indiana Code section 34-13-3-5C to
argue that all claims against Moore and Campbell should be dismissed because
the second amended complaint did not allege that Moore or Campbell "committed
any criminal acts; or acted maliciously, willfully and wanton or calculated to
benefit them personally."  (DE #127, p. 7.)  While this is relevant to
Swoope's state law claims as will be discussed below, this does not have any
specific bearing on Swoope's federal claims.

[12]  In Count VII of his second amended complaint, Swoope states that
"[t]he [board] policy of continuing the employment of Swoope and other non-
statutory administrators without a new written contract each year created a
constitutional property and liberty interest in his position and a reasonable
expectation of continued employment under the Fourteenth Amendment to the
United States Constitution.  (DE #106, p. 19.)  Swoope further states
"[c]hanging Swoope's employment status, without due process, to that of a
daily at-will employee vioalted Swoope's reasonable expectation of continued
employment."  *Id*. at 20.

violation of the Fourteenth Amendment. *Lim v. Central DuPage Hosp.*, 871 F.2d 644, 645 (7th Cir. 1989). "To demonstrate a procedural due process violation, the plaintiffs must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004) (citing *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993)). Under the due process clause, property is an "interest to which a government has given someone an entitlement." *Patterson v. Portch*, 853 F.2d 1399, 1405 (7th Cir. 1988). However, courts have held that the person must have a "legitimate" claim to an entitlement as opposed to "a hope or expectation." *Blackout Sealcoating, Inc. v. Peterson*, 733 F.3d 688, 690 (7th Cir. 2013); see also *Confederation of Police v. City of Chicago*, 547 F.2d 375, 376 (7th Cir. 1977) ("[T]he existence of a property interest in public employment cognizable under the due process clause depends on whether state law has affirmatively created an expectation that a particular employment relationship will continue unless certain defined events occur."). As Defendants point out:

> Indiana recognizes the distinction between employees who are retained for a definite duration or subject to contract, and employees whose employment is of indefinite duration, and may terminate at the will of the employer for any reason. This distinction between a contractual and an at-will employee gains significance in the context of an employee's termination. While an employee of definite duration may possess a cause of action for

> breach of contract if an employer fires him in
> violation of the employment agreement, no such
> clear solution exists for the wrongfully
> terminated employee-at-will.

*Remington Freight Lines, Inc. v. Larkey*, 644 N.E.2d 931, 939-40
(Ind. Ct. App. 1994).

Here, Defendants argue that Swoope need not have been afforded
any due process protections because he was an at-will employee. In
support of their position, Defendants cite to a letter dated July
29, 2009, which allegedly stated that all administrative contracts
with GCSC expired as of June 30, 2009, and that Swoope was retained
on a non-contractual basis from July 1, 2009, to July 31, 2009.
(See DE #127, p. 11, citing to Exhibits 6 & 11.) However, as noted
above in the facts section of this order, that letter was not
included as evidence with Defendants' submissions. It is clear
from the record that Swoope's original employment contract began on
July 1, 2006, and that its original expiration date was June 30,
2007. However, it is undisputed that the contract was renewed by
GCSC beyond that term. Swoope was given "preliminary notification"
that the board was considering not renewing his contract due to
"configuration of schools, budget reductions, and school closings"
on December 8, 2008,[13] and his last day of employment was July 31,
2009. Importantly, what is not clear is what happened in between
those two dates. In any event, Swoope has presented evidence that

---

[13] (See DE #127-6.)

the board voted to retain the administrators in the district each year since 2007 without written contracts.[14]  Giving Swoope the benefits to which he is entitled, it is reasonable to infer that his contract was renewed by the board in one year increments from July 1, 2007, to June 30, 2008, and then again from July 1, 2008, to June 30, 2009.  Without admissible evidence to the contrary, it is also reasonable to infer that, despite the "preliminary notification" sent to Swoope in December of 2008, his continued employment with GCSC after on and after July 1, 2009, coupled with the board's prior renewal actions, created a reasonable expectation of continued employment as a contractual employee through June 30, 2010.  Genuine disputes exist as to Defendants' assertion that Swoope was retained "at-will" from July 1, 2009, to July 31, 2009, and, as such, summary judgment is **DENIED** as to Swoope's due process claims.[15]

Finally, as to Swoope's discrimination claims, Defendants argue that Swoope cannot prove any discriminatory action on the part of Defendants because Swoope was "not subjected to any adverse

---

[14] (See DE #147-17, pp. 1-4.)

[15] Defendants hung their hat on the contention that Swoope was an at-will rather than contractual employee, and their brief failed to address whether Swoope had actually been afforded any due process measures prior to his termination.  The due process clause requires that people be "given some kind of notice and afforded some kind of hearing." *Blackout Sealcoating, Inc.*, 733 F.3d at 691.  While the "preliminary notification" letter addressed such procedural measures, Defendants do not attempt to analyze the sufficiency of those measures, nor do they provide evidence that Swoope failed to take advantage of those measures.  Again, the record is unclear as to what occurred between December 8, 2008, and July 29, 2009, and the Court is not required to fill in the blanks for the parties.

employment action" and was "not treated less favorably than similarly situated employees outside his protected class." (DE #127, pp. 8-10.) In their brief, Defendants cite generally to the direct and indirect methods of proving discrimination and state simply:

> The problem is that Swoope was unable to obtain the proper license to be an administrator. Swoope reached the capacity of emergency permits. Swoope had to complete the requirements of Indiana University Northwest in order to obtain his permanent teacher's license. Swoope did not change the incomplete to a complete so that he could finish his practicum. Dr. Smith had issues with the log and Swoope's conduct. Therefore, the school had a non discriminatory reason to not make Swoope an administrator. Swoope cannot show either directly or indirectly that the school discriminated against him. Swoope had an obligation to obtain his license in order to remain an administrator. Swoope failed to do this. Even though Swoope did not complete his practicum at Marquette he finished at another school. However, Swoope's performance was deemed unsatisfactory by Dr. Smith and Swoope was given an incomplete.

(DE #127, pp. 9-10.)[16] Swoope has marshaled evidence in opposition to Defendants' argument in the "Statement of Genuine Issues" section of his response brief, but he has failed to provide any relevant argument or analysis whatsoever. (See generally DE #148.) Because the briefing of *both* parties is so poor in relation to this issue, the Court is in a bit of a quandary. On the one hand, as

---

[16] Defendants also provide some irrelevant information related to Smith and Wigle's actions; those parties were previously dismissed by this Court.

noted above, the movant has the initial burden of informing the Court why summary judgment is appropriate. See *Modrowski*, 712 F.3d at 1168. On the other hand, if the movant meets that requirement, the non-movant bears the ultimate burden of persuasion. *Id*. Ultimately, while not required to craft arguments for either side, keeping the burden-shifting principles above in mind, the Court will do its best to dissect the parties' arguments and evidence appropriately. See *Nelson*, 657 F.3d at 590.

Throughout his second amended complaint, Swoope alleges various forms of reverse[17] sexual discrimination including disparate treatment, retaliation, and failure to hire. For purposes of this motion, only Swoope's disparate treatment and retaliation claims are at issue.[18]

---

[17] As neither party discusses the fact that Swoope's reverse discrimination claims may be subject to different *prima facie* case standards, the Court will not go into detail for purposes of this motion either. See generally *Mills v. Health Care Serv. Corp.*, 171 F.3d 450 (7th Cir. 1999).

[18] As noted in more detail in the state law claims section below, Swoope's failure to hire claims were dismissed by this Court *with* prejudice several years ago and have not been subsequently revived. (See DE #82, pp. 8-10) (noting that Swoope failed to respond to Defendants' arguments that his failure to hire claims should be dismissed and that Swoope had not adequately alleged a proper claim.) Nothing in Swoope's second amended complaint changes that determination.

Furthermore, as discussed in this Court's previous order, after careful consideration of the amended complaint, the Court determined that Swoope's discrimination claims were for disparate treatment based on sex and retaliation, not necessarily for hostile work environment. (See *Id*. at p. 11, n.1.) Swoope's addition of boilerplate legal conclusions in the second amended complaint (such as "discriminatory actions" that "altered and transformed the conditions of Swoope's employment and for Swoope, created an abusive, hostile, threatening, offensive work environment directed solely at Swoope because he complained about how he, as a male, was treated differently than females") does not alter the Court's previous analysis. Swoope's gender discrimination claims are properly categorized as disparate treatment and retaliation. Importantly, Swoope does not allege (nor is there evidence in the record to support such a finding) that any of Defendants' actions were

25

Actionable discrimination under Title VII of the Civil Rights Act can take many shapes, and the methodology of proving each distinct type is slightly different.[19]  In general, a Title VII gender discrimination claim is viable "if the plaintiff presents either direct or circumstantial evidence of discrimination (the 'direct method') or indirect evidence that satisfies the three-part, burden shifting test outlined in the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ('the indirect method')." *Phelan v. Cook Cnty.*, 463 F.3d 773, 779 (7th Cir. 2006).  The bottom line at the summary judgment stage is whether a reasonable jury could find discrimination based on the evidence presented.  *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 877 (7th Cir. 2014) (citing *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring) ("In order to defeat summary judgment, the plaintiff one way or the other must present evidence showing that she is in a class protected by the statute, that she suffered the requisite adverse action (depending on her theory), and that a rational jury could conclude that the employer took that adverse action on account of

---

sufficiently severe or pervasive enough to create a hostile and abusive atmosphere.  See e.g. *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 731 (7th Cir. 2009).

[19]  The Court notes that "[t]he substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981."  See *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007), aff'd, 553 U.S. 442 (2008)).

her protected class, not for any non-invidious reason.").

*Gender Discrimination*

In his second amended complaint, Swoope alleges, in part, that he was discriminated against and treated differently because of his gender when: (1) he was required by Moore to get pre-authorization to complete the A695 experience/practicum aspect of the Program within GCSC, while female interns were not; (2) he was not allowed to use his vacation and/or personal leave time to complete the A695 experience/practicum aspect of the Program within GCSC, while female interns were; (3) because of these actions by Moore (who was working in concert with Campbell), he was prevented from completing the A695 experience/practicum aspect of the Program within GCSC which subsequently led, at least in part, to his failure to gain his License; and (4) he was ultimately terminated by GCSC due to an alleged revised administrative organizational chart that eliminated his position. In their motion for summary judgment, Defendants cite to the general standards of proof and state that Swoope was "not subjected to any adverse employment action" and was "not treated less favorably than similarly situated employees outside of his protected class."

To prevail on a claim of gender discrimination under the indirect method of proof, a plaintiff must first establish a *prima facie* case by showing "that (1) she is a member of the protected

class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Perez v. Thorntons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013). If the plaintiff does this, the burden shifts back to the employer to "introduce a legitimate, nondiscriminatory reason for the employment action." *Id.* If the employer provides such a reason, the burden returns to the plaintiff to show that the proffered reason was pretextual. *Id.*

Here, by arguing only that Swoope was not subject to an adverse employment action and that he was not treated less favorably than similarly situated employees, Defendants seemingly concede that Swoope was a member of a protected class[20] and that he was performing well enough to meet their legitimate expectations. As to an adverse employment action, Swoope has presented evidence that he was ultimately terminated via an alleged reorganization. He also pointed out that he was denied an opportunity to use his vacation and/or personal leave time in the same manner that female employees were. For purposes of a *prima facie* case, this is enough. See *Chaib v. Indiana*, 744 F.3d 974, 982 (7th Cir. 2014) (to establish that an adverse employment action occurred, "an employee must show some quantitative or qualitative change in the terms or conditions of his employment or some sort of real

---

[20] See footnote number 17 above.

harm.")).

The analysis is a bit more difficult with regard to a similarly situated employee. In order to create an inference of discriminatory intent, a plaintiff using the indirect method of proof must identify "similarly situated comparators because all things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Id*. at 984 (internal quotation marks and brackets omitted). That similarly situated employee must be "directly comparable to her in all material respects." *Perez*, 731 F.3d at 704. "The purpose of the inquiry is to eliminate other possible explanatory variables, such as differing roles, performance histories, or decisionmaking personnel, which helps isolate the critical independent variable—discriminatory animus." *Id*. (internal quotations marks omitted). Swoope points to evidence in the record of a Ms. Ava Lignon, who, according to Dunlap, was an intern in the Program, did not need to get pre-authorization from Moore to begin her A695 experience/practicum, missed one day a week out of her building for a complete semester while completing the Program, and eventually became a principal within the GCSC. The Court notes that Defendants chose not to file a reply, so while there may be material differences between Ms. Ligon and Swoope, Defendants have shed no light on the issue. Thus, giving Swoope the benefits to which he is entitled at this stage, the Court finds

that Swoope has presented evidence of a *prima facie* case of gender discrimination.

The Court assumes when Defendants state that the "problem is that Swoope was unable to obtain the proper license to be an administrator," they are attempting to articulate a legitimate, non-discriminatory reason for the adverse employment action. They further state that "Swoope had an obligation to obtain his license in order to remain an administrator [and he] failed to do this." The issue with this assertion is that there is evidence in the record to indicate that reason may be pretextual. The Seventh Circuit has stated:

> Pretext is a lie, specifically a phony reason for some action, and thus, to show pretext, a plaintiff must show that (1) the employer's nondiscriminatory reason was dishonest; and (2) the employer's true reason was based on a discriminatory intent. This can be done with either direct or indirect evidence. If the plaintiff proceeds to offer indirect evidence, the plaintiff must show that the employer's reason is not credible or that the reason is factually baseless. In addition, the plaintiff must also provide evidence of at least an inference that the real reason for the adverse employment action was discriminatory.

*Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008) (internal citations, quotation marks, and brackets omitted).

Defendants have provided evidence that Swoope's final renewal permit expired on June 30, 2008. They argue that the failure to have either a valid temporary permit or an actual License was fatal

to his continued employment with GCSC. However, as outlined above, it is undisputed that Swoope *was* employed with GCSC for over a year after that expiration date. Giving Swoope the benefit of all reasonable inferences, he has presented evidence that his contract term was renewed by the board from July 1, 2008, to June 30, 2009, and again from July 1, 2009, to June 30, 2010, before it was cut short by his termination on July 31, 2009. Taking those assertions as true, Defendants renewed Swoope's contract twice after they were aware that his emergency permit had expired, so their reason that his employment was solely contingent upon Swoope having a temporary or permanent License could be viewed as less than credible. Furthermore, the "preliminary notification" letter the board sent to Swoope in December of 2008 only mentioned a potential decision not to renew Swoope's contract because of "configuration of schools, budget reductions and school closings," rather than any issues with his License. And, twice in their brief Defendants state that Swoope was terminated due to a restructuring.[21] Furthermore, while the Court agrees with Defendants that it is undisputed that Smith made the ultimate decision to give Swoope an incomplete in the A695 course and that Swoope never received his License, Swoope has presented enough evidence that, if believed, could show that Defendants' deliberate actions may have contributed, at least in part, to Swoope's failure to gain that

---

[21] See DE #127, pp. 5, 11.

License.

Although Swoope doesn't use the word pretext (because, again, his response brief is lacking in argument or analysis), he does present evidence that, viewed in his favor, could show that Defendants' true reason for his termination was based on discriminatory intent. As noted above, Defendants' lack of License rationale could be deemed dishonest. Also, if believed, Swoope's evidence shows that he was treated differently than female employees in relation to the A695 experience/practicum because he was required by Moore to get pre-authorization prior to starting, was not allowed to use his vacation and/or personal leave time, and was prevented from completing it within GCSC. Swoope complained about that allegedly discriminatory treatment and was later terminated. This is enough to show at least an inference that the real reason for the adverse employment action was discriminatory. Therefore, summary judgment is **DENIED** as to Swoope's disparate treatment gender discrimination claims.[22]

*Retaliation*

Defendants fail to even mention the word retaliation in reference to Swoope's discrimination claims, which span throughout his second amended complaint. For example, Swoope alleges that he

---

[22]   In so ruling, the Court notes again that neither party adequately briefed this issue, and, as such, the ultimate determination of whether Swoope was discriminated against will be left to the trier of fact.

was retaliated against for having complained of Moore and Campbell's allegedly discriminatory treatment when he was: (1) prevented from using his vacation time and/or personal leave time to complete the Program within the district; (2) prohibited from completing the A695 experience/practicum part of the Program at Marquette Elementary School which ultimately contributed to his failure to obtain his License; (3) not paid for "Saturday School" work; (4) threatened with discharge for insubordination for refusing to apologize for having complained about the alleged discrimination; and (5) ultimately terminated due to an alleged revised administrative organizational chart that eliminated his position.

To establish retaliation under the direct method, "a plaintiff must prove (1) that she engaged in statutorily protected activity; (2) that she was subjected to an adverse employment action; and (3) that there was a causal connection between the two." *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015) (citing *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011)). Notably, there is no requirement that a plaintiff point to a similarly situated employee when using the direct method to prove his claim. Under the indirect method, on the other hand, an employee must show that "(1) the employee engaged in statutorily protected activity; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and

(4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Majors v. General Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013). For both methods, "[t]he showing a plaintiff must make to set out an adverse employment action required for a retaliation claim is lower than that required for a discrimination claim; a plaintiff must only show that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib*, 744 F.3d at 986-87 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

The Court finds that Defendants' cursory statement that Swoope was not discriminated against because he was "not subjected to any adverse employment action" and because "he was not treated less favorably than similarly situated employees outside of his protected class" is insufficient to have triggered the shifting of the burden to Swoope. Defendants' do not even tangentially reference a statutorily protected activity or a causal connection[23] (or lack thereof of either). It is unfair to require the opposing party to present a defense to a claim that has not been adequately challenged. See *Modrowski*, 712 F.3d at 1168. Therefore, Defendants' motion for summary judgment as to Swoope's retaliation

---

[23] The Court is cognizant that a causal connection is not required under the indirect method of proof. *Majors*, 714 F.3d at 537. Nevertheless, the point remains that Defendants failed to address Swoope's retaliation claims in *any* adequate manner.

claims is **DENIED**.[24]

*State Law Claims*

Swoope has alleged various state law tort claims such as defamation and tortious interference with a contract throughout his complaint.  Defendants argue that these claims are barred because Swoope did not serve Defendants with a tort claim notice as required by Indiana law.  (See Brief, DE #127, p. 12.)  Again, Swoope has failed to respond to this argument in any meaningful way.[25]

The Indiana Tort Claims Act ("ITCA") provides that "a claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision . . . within

---

[24] Even if it was sufficient, however, as set forth above, Swoope has presented evidence that he was subjected to an adverse employment action (i.e. he was ultimately terminated via an alleged reorganization after Moore and/or Campbell denied him the opportunity to use his vacation and/or leave time to complete the Program within the GCSC).  See *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007) (describing adverse employment actions as significant changes in employment status, changes to the employee's current wealth, changes involving the employee's career prospects and future wealth, or changes to the employee's work conditions).  As noted above, a plaintiff need not point to a similarly situated employee if proceeding under the direct method in retaliation cases.  The Court takes no position as to the causation aspect of the analysis, as neither party has referenced that element at all.

[25] Swoope has provided a boilerplate law section (with no independent analysis) stating that federal 1983 claims are not precluded by the Indiana Tort Claims Act.  (See Brief, DE #148, pp. 10-11.)  As pointed out in a previous order by this Court, Swoope is again confusing the application of the Indiana Tort Claims Act.  He is right, of course, that under *Felder v. Casey*, 487 U.S. 131 (1988), the Supreme Court held that notice-of-claim statutes are inapplicable to federal 1983 claims. However, this does nothing to change the disposition of Swoope's state tort law claims.  While the notice provisions are not applicable to section 1983 claims, the ITCA does apply to pendent state law claims.  *Meury v. Eagle-Union Cmty. Sch. Corp.*, 714 N.E.2d 233, 242 (Ind. Ct. App. 1999).

180 days after the loss occurs." Ind. Code § 34-13-3-8. A "school corporation" is included in the definition of a political subdivision for the purposes of the ITCA. Ind. Code § 34-6-2-110(9). The notice requirements of the ITCA apply not only to suits against political subdivisions, but also to suits against employees of political subdivisions. *Alexander v. City of South Bend*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003); *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999). Once a defendant raises failure to comply with the notice requirements of the ITCA, the burden then shifts to the plaintiff to prove compliance. *Davidson*, 716 N.E.2d at 34.

Swoope has failed to present any evidence that he complied with the ITCA notice requirements. Therefore, as a matter of law, any of his claims for defamation and/or tortious interference with a contract must fail, and Defendants' motion for summary judgment is **GRANTED**.[26]

Swoope has also alleged a state law breach of contract claim in his second amended complaint. Defendants argue that Swoope was

---

[26] Additionally, as Defendants point out in their motion (see DE #127, p. 7), Swoope's tort claims against Moore and Campbell individually fail because the ITCA requires that an action filed against a municipal corporation's employees personally must allege that the employees' actions were criminal, clearly outside the scope of the employee's employment, malicious, willful and wanton, or calculated to benefit the employee personally. Ind. Code § 34-13-3-5(c). Swoope failed to present any evidence that Moore and Campbell acted in such a manner; in fact, in his second amended complaint (see DE #106, p. 2), he specifically notes that his damages arose from actions taken by Moore and Campbell in their capacities as executive director and interim superintendent of the GCSC. Moore and Campbell are not personally amenable to suit on these claims. See *Ball v. City of Indianapolis*, 760 F.3d 636, 644-45 (7th Cir. 2014); Ind. Code § 34-13-3-5(b).

an "at-will" employee, so any contract claim against Defendants would sound in tort rather than contract under Indiana law, and, because of that classification, summary judgment is appropriate due to the lack of notice under the ITCA. (See Brief, DE #127, pp. 11-13.) Again, Swoope has failed to respond to that argument in any meaningful way.[27]

Without delving into the merits, the Court notes that Swoope's state law breach of contract claim in Count I was dismissed by this Court on August 28, 2012. (DE #82.) The dismissal of that claim was *with* prejudice. (*Id.* at 1.) In the dismissal order, the Court noted that Swoope had failed to respond to Defendants' argument that the breach of contract claim in Count I should be dismissed because Swoope did not allege that he had performed his part of the contract. (*Id.* at 4-5.) Swoope subsequently filed a motion to alter or amend judgment arguing that the Court had erred by ruling that he had failed to state a claim for breach of contract.[28] (DE

---

[27] In his "Statement of Genuine Issues" Swoope simply states, "Swoope not at will employee. (Swoope -Exh. - 17.)."

[28] In that motion, Swoope stated that no breach of contract claim was intended in Count I and that it was only "intended to provide factual background material to show the development of the relationship between the School defendants and Swoope and demonstrate the facial plausibility that would allow the court to draw the reasonable inferences that the defendants are liable for the misconduct alleged in the overall Complaint." (DE #86, pp. 4-5.) Swoope went on to argue that his breach of contract claims were found in Counts VI & VII. (*Id.*) However, as the Court pointed out in its order denying Swoope's motion to amend or alter judgment, Swoope could have (and should have) made those arguments in response to the original motion to dismiss, but he failed to do so. (See DE #97, p. 4.) The Court noted that Defendants had very clearly argued in their motion to dismiss that Count I should be dismissed because Swoope did not allege all of the elements of breach of contract, yet nowhere in Swoope's response brief did he argue that he did not intend for Count I to allege breach of contract, nor did he attempt

#86.)  The Court issued an order denying Swoope's motion to alter or amend judgment on December 10, 2012.  (DE #97.)  On February 1, 2013, Swoope filed a motion to file a second amended complaint.  (DE #100.)  Defendants opposed the motion on grounds that allowing Swoope to amend his complaint yet again was prejudicial to them because discovery was almost complete and they were on the process of preparing their summary judgment motion.  (DE #101.)  On April 1, 2013, Magistrate Rodovich granted the motion to amend, focusing that order solely on the timeliness/prejudice issue, as that was the only issue raised by the parties.  (DE #105.)  Swoope filed his second amended complaint on April 7, 2013.  (DE #106.)  In it, he added additional information to Count I related to his previous breach of contract claim.  (*Id*. at 3-6.)  Specifically, he referenced (and attached as an exhibit) the original teacher contract signed on August 30, 2006, and alleged that he had "performed all conditions required of him as Assistant Principal until he was terminated . . . ."  (*Id*. at 4.)  He also added information about that alleged breach of contract claim related to Defendants' refusal to permit Swoope from completing the Program within the district.  (*Id*. at 5.)  The rest of Court I is substantively identical to Swoope's previously dismissed claim.

Under these circumstances, the Court finds that Swoope's breach of contract claim in Count I, which was already dismissed

---

to show it alleged another cause of action.  (*Id*. at 4-5.)

with prejudice by this Court, has not been resurrected by either his second amended complaint or by his response (or rather lack thereof) to Defendants' motion for summary judgment. This claim was clearly and definitively dismissed with prejudice by the Court several years ago, and it need not be rehashed further in this order.[29] As such, no state law claims remain pending in this action.[30]

---

[29] The same determination applies to Count II, which was also previously dismissed by this Court with prejudice. (DE #82, p. 1.) Count II of Swoope's second amended complaint is virtually identical to Count II of his first amended complaint. (DE #106, pp. 6-8.) This claim was clearly and definitively dismissed with prejudice by the Court several years ago, and it need not be rehashed.

[30] To the extent that Swoope argued in his motion to alter or amend judgment that his state law contract claims were found in Counts VI & VII, he did not elaborate then as to what those contract claims allegedly entailed, nor has he done so now. In Count VI of his second amended complaint, Swoope states that Defendants "breached the agreement between Swoope and the GCSC pursuant to which he would be granted time to obtain his administrative license." (DE #106, p. 17.) In the motion for summary judgment, Defendants have framed the issue of breach of contract in terms of the teacher/employment contract between Swoope and GCSC. Swoope's single line response stating, "Swoope not [an] at will employee" and citation to exhibit 17 (the teacher contract itself and an email regarding the reassignment of non-statutory administrators) does nothing to reframe that issue for purposes of the state law questions. (See DE #148, p. 7 & DE #147-17.) Swoope does not provide any appropriately cited and relevant evidence in response to Defendants' motion that would suggest that any contract was breached (or even existed) between himself and Defendants related to the time within which he would be "granted" to obtain his License. Similarly, in Count VII of his second amended complaint, Swoope states that "[t]he policy of continuing the employment of Swoope and other non-statutory administrators without a new written contract each year created a constitutional property and liberty interest in his position and a reasonable expectation of continued employment under the Fourteenth Amendment to the United States Constitution." (DE #106, p. 19.) Because Swoope does not provide a properly cited and supported response to Defendants' motion for summary judgment regarding the state law contract claim, the Court has addressed Count VII in the context of a constitutional claim (as Swoope himself alleged in the second amended complaint) rather than as a state law contract claim.

*Failure to State a Claim*

Finally, Defendants' last three pages of their brief argue that each count should be dismissed in its entirety for failure to state a claim. (See DE #127, pp. 13-15.) Each section is a sentence or two long, and makes no attempt to apply any case law at all (let alone relevant case law) to the declarations they set forth or to analyze the matter in any way. Defendants language suggests that they may be attempting to proceed under Federal Rule of Civil Procedure 12(b)(6), but that does not make sense in the context of a summary judgment motion, especially in light of the factual matters they present that are clearly outside of the pleadings. In any event, the Court declines to untangle Defendants' arguments, and any request for summary judgment based on this section of their brief is **DENIED**.

<u>CONCLUSION</u>

For the reasons set forth above, the Motion for Summary Judgement (DE #126) is **GRANTED IN PART AND DENIED IN PART** as set forth in the body of this Order, the Defendants' various Motions to Strike (DE #144, #145, & #150) are **DENIED**, and Swoope's Motion for Leave to File Instanter (or, more accurately, *nunc pro tunc*) (DE #146) is **GRANTED**. Furthermore, in its discretion, the Court **STRIKES** the documents at the following docket entries *sua sponte*:

DE #135 and DE #136 through #143.


DATED: March 30, 2015                   /s/ RUDY LOZANO, Judge
                                        United States District Court